UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | | Date | March 28, 2023 |
|---|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND (DKT. 11) AND DEFENDANT'S MOTION TO COMPEL ARBITRATION (DKT. 14)**

**I.     Introduction**

On January 24, 2022, Hong Kong Continental Trade Co. Limited ("Plaintiff" or "HKTC") filed this action against Natural Balance Pet Foods, Inc. ("Defendant" or "NBPF") in the Los Angeles Superior Court. Dkt. 1-1. The Complaint advances the following causes of action: (1) breach of the implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) promissory estoppel; (4) fraud and deceit; (5) unfair business practices; and (5) unjust enrichment. On January 26, 2022, Defendant removed the action, before Plaintiff effected service.

On February 9, 2022, Plaintiff filed a Motion to Remand to State Court (the "Motion to Remand" (Dkt. 11)). On March 2, 2022, Defendant filed an opposition (the "Opposition to Remand" (Dkt. 15)). Plaintiff filed a reply (the "Reply in Support of Remand") on March 16, 2022.

On February 15, 2022, Defendant filed a Motion to Compel Arbitration (the "Motion to Compel Arbitration" (Dkt. 14)). On March 8, 2022, Plaintiff filed an opposition to that motion (the "Opposition to Arbitration" (Dkt. 16)). Defendant filed a reply (the "Reply in Support of Arbitration" (Dkt. 21)) on March 22, 2022.

A hearing was held on the Motion to Remand and the Motion to Compel Arbitration (collectively, the "Motions") on October 3, 2022, and the Motions were taken under submission. Dkt. 25. At the hearing, the parties were directed to submit simultaneous supplemental briefing regarding the following issues: (1) whether under California law, California law applies to the issues of arbitrability; (2) whether under California law, the arbitration provision at issue is unconscionable; and (3) if the provision is unconscionable, whether under California law, severing any unconscionable term would permit compelling arbitration. *Id.*

On October 14, 2022, Defendant filed its supplemental brief ("Defendant's Supplemental Brief" (Dkt. 28)) and a request for judicial notice ("Request for Judicial Notice" (Dkt. 29)). On the same day, Plaintiff filed its supplemental brief ("Plaintiff's Supplemental Brief" (Dkt. 30)). On March 2, 2023, Plaintiff was directed to submit any response to whether the determination of the validity of the arbitration agreement is to be delegated to an arbitrator. Dkt. 33. On March 9, 2023, Plaintiff filed a supplemental brief

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

("Plaintiff's Additional Supplemental Brief" (Dkt. 34)) on this issue.

**II.     Factual Background**

    A.     The Parties

It is alleged that Plaintiff is a limited liability company whose principal place of business is in Hong Kong. Dkt. 1-1 ¶ 1. It is alleged that Plaintiff is a "reputable specialized pet food wholesale company with significant experience distributing well-known brands in Greater China." *Id.* ¶ 2.

It is alleged that Defendant is a California corporation that is "an American pet food manufacturer which sells its products worldwide." *Id.* ¶ 4.

    B.     The Allegations in the Complaint

The Complaint alleges that Defendant contacted Plaintiff in August 2019 to assume and sell its unsold pet food inventory. *Id.* ¶ 10. It is alleged that when Defendant did so, Defendant's former distributor for Hong Kong, Macau, and Mainland China had "experienced liquidity issues and failed to pay for produced orders" and Defendant faced the risk that the required use by date for its inventory would expire absent prompt sales. *Id.* ¶ 10. It is alleged that Plaintiff was successful in "handling this crisis," and as a result, Defendant entered into a series of distributorship contracts with Plaintiff and then "signed a five-year exclusive distributorship agreement with HKCT" for the Hong Kong, Macau, and Mainland China territory on January 16, 2020 ("the Agreement"). *Id.* ¶¶ 11-12.

It is alleged that, on or about February 1, 2021, Defendant was acquired by Nexus Capital Management LP, which is a private equity firm. *Id.* ¶ 19. At the time of this acquisition, Defendant allegedly began making inquiries to other companies about taking over distribution of its products in the territory Plaintiff covered. *Id.* ¶ 21. It is alleged that Defendant then failed to provide the products it had agreed to Plaintiff, and that this caused Plaintiff to lose the ability to complete sales and obtain the associated revenues. *Id.* ¶ 23-35. It is alleged that Plaintiff is fully dependent on Defendant for its commercial viability because of a non-compete provision in their contract. *Id.* ¶¶ 41-43.

    C.     Chronology of Removal

As noted, on January 24, 2022, Plaintiff filed this action in the Los Angeles Superior Court. Dkt. 1-1. On that same day, the Superior Court issued the Summons. Declaration of Julie Ritchie ("Ritchie Decl."), Dkt. 11-2 ¶ 4. Plaintiff's counsel declares that "[u]pon receipt, my office put the summons and complaint out for service to Defendant." *Id.* ¶ 5. As also noted, Defendant removed the action on January 26, 2022. Dkt. 1. On January 28, 2022, Defendant was served with the summons and complaint. Ritchie Decl. ¶ 7.

    D.     The Arbitration Provision

The Agreement between the parties includes the following provision as to arbitration ("Arbitration Provision"):

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

> Any dispute arising between the parties out of or in connection with this Agreement shall be finally resolved by arbitration in San Francisco, California pursuant to the International Arbitration Rules of the American Arbitration Association. The arbitration shall take place before a single arbitrator jointly selected by the parties. In the event the parties are not able to agree to a single arbitrator within thirty (30) days of the written demand of either party for arbitration, the arbitrator shall be appointed by the AAA upon application by either party.
>
> Notwithstanding the foregoing, NBPF shall have the right to sue in any court of competent jurisdiction to collect from Distributor funds due and owing NBPF for Products sold and delivered to Distributor hereunder, and Distributor agrees that, in the event of any suit for collection brought by NBPF, Distributor shall not be entitled to raise as a defense thereto any set-off or counterclaim alleged by Distributor; rather, any set-off or counterclaim alleged by Distributor shall be subject to the arbitration provision of this paragraph 14.2. This paragraph 14.2 shall not be construed to prevent NBPF from seeking injunctive relief against Distributor from any judicial or administrative authority or competent jurisdiction to enjoin Distributor from breaching any provision of this Agreement pending the resolution of a dispute by arbitration.

Declaration of John Sturm ("Sturm Decl."), Dkt. 14-2, Ex. 1 § 14.2.
.
The Agreement also contains the following two provisions:

> This Agreement shall be governed in all respects by the substantive laws of the State of New York, U.S.A. (without giving effect to the conflicts of law principles thereof). The United Nations Convention on Contracts for the International Sales of Goods shall not apply to this Agreement. *Id.* § 14.1.
>
> The clauses of this Agreement shall be deemed separable and if any portion of the Agreement shall be held illegal, unenforceable or invalid for any reason, the remainder shall not thereby be invalidated but shall remain in full force and effect. *Id.* § 18.3.

**III.     Request for Judicial Notice**

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may take judicial notice of a wide range of matters, including public records, government documents, judicial opinions, municipal ordinances, newspaper and magazine articles, and the contents of websites. *See, e.g., Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 n.2 (9th Cir. 2013); *Tollis, Inc. v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007); *United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *Heidelberg USA, Inc. v. PM Lithographers, Inc.*, No. CV1702223ABAJWX, 2017 WL 7201872, at *2 (C.D. Cal. Oct. 19, 2017); *United States, ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | | Date | March 28, 2023 |
|---|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | | |

Defendant requests judicial notice of the International Dispute Resolution Procedures of the American Arbitration Association, effective June 1, 2014, available at https://www.adr.org/sites/default/files/ICDR_Rules.pdf. Dkt. 29 at 2. A copy of these rules is attached to the Request for Judicial Notice. Dkt. 29, Ex. 1. Plaintiff has not opposed the Request for Judicial Notice.

The rules of the American Arbitration Association ("AAA") are the proper subject of judicial notice because they can be readily be determined from a source whose accuracy cannot reasonably be disputed. *See Torres v. Secure Commc'n Sys., Inc.*, No. SACV2000980JVSJDEX, 2020 WL 6162156, at *3 (C.D. Cal. July 25, 2020) (taking judicial notice of AAA rules); *Chavarria v. Ralphs Grocer Co.*, 812 F. Supp. 2d 1079, 1087 n.8 (C.D. Cal. 2011) (same). Therefore, the Request for Judicial Notice is **GRANTED**.

**IV.    Motion to Remand**

      1.    Legal Standards

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." District courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). In general, "[t]he removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir.), *opinion amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004).

Under 28 U.S.C. § 1441(b)(2), an action removable solely on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a) "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This is commonly referred to as the "forum defendant" rule against removal. *See Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 939 (9th Cir. 2006). In contrast to the jurisdictional requirement under 28 U.S.C. § 1332(a)(1) for complete diversity between the parties (*Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009)), the forum defendant rule applies as a procedural rule governing the propriety of removal and is not a jurisdictional rule. *Lively*, 456 F.3d at 936.

District courts in this Circuit have reached different conclusions as to whether the forum defendant rule requires remand of an action under 28 U.S.C. § 1447 where removal occurred before the diverse forum defendant was served in the underlying state action. This is known as "snap removal." *Llanos v. Delta Air Lines, Inc.*, No. 219CV10757VAPASX, 2020 WL 635477, at *3 (C.D. Cal. Feb. 11, 2020). Although the Ninth Circuit has not addressed the issue, other Circuits have. The Second, Third and Fifth Circuits have held that Section 1441(b)(2) permits snap removal. *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704-07 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152-54 (3d Cir. 2018); *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 486 (2020). The Eleventh Circuit has stated in dicta that it does not approve of snap removal. *Goodwin v. Reynolds*, 757 F.3d 1216 (11th Cir. 2014); *see also Choi v. Gen. Motors LLC*, No. CV 21-5925-GW-MRWX, 2021 WL 4133735, at *3 (C.D. Cal. Sept. 9, 2021) (discussing the context of the Eleventh Circuit discussion of snap removal).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

This Court has previously concluded that the plain text of Section 1441(b)(2) permits snap removal. *See Colorado Seasons* v. *Friedenthal*, CV19-09050, Dkt. 17. The plain meaning of § 1441(b)(2) "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." *Dechow v. Gilead Scis., Inc.,* 358 F. Supp. 3d 1051, 1054 (C.D. Cal. 2019). "It is well established that 'when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

Permitting snap removal is neither absurd nor in conflict with the intent of Congress. As noted in *Colorado Seasons*, the purpose of Section 1441(b)(2) is to prevent gamesmanship, both by home-state defendants seeking a federal forum and by plaintiffs seeking to avoid removal, and to provide "a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." CV19-09050, Dkt. 17 at 5 (quoting *Gibbons,* 919 F.3d at 704-07). "[W]here these competing purposes -- preventing gamesmanship and providing a bright-line rule -- are present, permitting snap removal is not an absurd result that warrants a departure from the language of the statute." *Id.* Thus, "[i]n light of the text of § 1441(b)(2) and the cases that have interpreted it, § 1441(b)(2) does not preclude the removal of an action in which a forum defendant has been named in the complaint, but has not yet 'properly joined and served.'" *Id.*

        2.      <u>Application</u>

Plaintiff argues that Defendant's removal of this action was improper. Plaintiff seeks to distinguish this case from *Colorado Seasons* on the ground that only one defendant is named in this action, and that defendant is a home-state defendant. Dkt. 19 at 4. Thus, Plaintiff argues, "there is no risk of gamesmanship by Plaintiff in naming a local defendant for the purpose of destroying diversity without real intent of litigating against them." *Id.* at 3. Plaintiff contends that the "true purpose of including the 'joined and served' language is never even triggered," and to permit removal here would be to allow gamesmanship on the part of Defendant. *Id.* at 3-4.

Although multiple defendants were named in *Colorado Seasons* and only one is named in this action, the reasoning of *Colorado Seasons* applies here with equal force. As noted in *Colorado Seasons*, to preclude removal where a forum defendant has not yet been joined and served would be to ignore the word "served" in the text of § 1441(b)(2), which is contrary to the plain meaning of the statute. This does not turn on the number of defendants.

Further, permitting snap removal here is neither absurd nor in conflict with the purpose of § 1441(b)(2). *Encompass Ins.* concluded that snap removal was valid under § 1441(b)(2) where only a single defendant was named. 902 F.2d at 152-54. It stated that "Congress' inclusion of the phrase 'properly joined and served' addresses a specific problem — fraudulent joinder by a plaintiff — with a bright-line rule. Permitting removal on the facts of this case does not contravene the apparent purpose to prohibit that particular tactic." 902 F.3d at 153. Although Plaintiff argues that permitting removal here does not support the purpose of preventing fraudulent joinder, "[f]ailing to further a purpose is not equivalent to the purpose's *impairment*." *Glob. Indus. Inv. Ltd. v. Chung*, No. 19-CV-07670-LHK, 2020 WL 2027374, at *4 (N.D. Cal. Apr. 28, 2020) (quoting *Monfort v. Adomani, Inc.*, 2019 WL 131842, at *4 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | | Date | March 28, 2023 |
|---|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | | |

Jan. 8, 2019) (emphasis added)). Furthermore, the adoption of a consistent interpretation of 1441(b)(2) that is not dependent on the number of defendants named in an action advances the purpose of providing a bright-line rule. Although adopting the plain meaning of the statute may result in permitting a defendant to remove a case that it otherwise would not have been able to remove, such a result is not "absurd." *See Encompass*, 902 F.3d at 153-54 ("[T]his result may be peculiar in that it allows [Defendant] to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result.").

*Burns* concluded that remand was warranted where only a single defendant was named. *See Burns v. Azusa Pac. Univ.*, No. 220CV09401CASMAAX, 2020 WL 7229762, at *4 (C.D. Cal. Dec. 8, 2020) (remand would be in keeping with the purpose of the forum defendant rule in part because "it is clear defendant has not been joined to defeat diversity because it is the only named defendant."). However, in *Burns*, there were also other factors that warranted remand. They included that defendant's counsel had represented to plaintiff that he would sign the Acknowledgment of Receipt for service, and it was only because of defendant's delay that service had not been completed by the time of removal. *Id.*

*Dechow* found that snap removal was proper where a single, in-forum defendant was named. *Dechow*, 358 F. Supp. 3d at 1054 ("[B]ecause the text of the statute is clear, and the result produced here is not absurd, the sole function of this Court is to enforce the statute according to its terms."). Other cases that have adopted the plain language approach to Section 1441(b)(2) have not limited the analysis to cases involving more than one defendant. *See, e.g., Choi*, 2021 WL 4133735, at *4 ("Certainty follows from application of the plain language of a statute, an approach that is in-line with the only federal courts of appeal to have directly-considered the question.")

*Global Industries Investment Ltd.* held that snap removal is proper regardless of the number of defendants. *See Glob. Indus. Inv. Ltd. v. Chung*, 2020 WL 2027374, at *1 (N.D. Cal. Apr. 28, 2020). The court rejected plaintiff's argument that snap removal is permitted only when multiple defendants are named, citing *Encompass* and reasoning that permitting pre-service removal by an in-state defendant does not undermine the purpose of § 1441(b)(2) to discourage fraudulent joinder. *Id.* at *4.

Plaintiff also argues that permitting removal in these circumstances would lead to absurd results because Plaintiff was not given a "meaningful opportunity" to serve Defendant. Dkt. 11-1 at 10. Some courts in this District have considered the timing and circumstances of removal as part of the analysis of whether application of the plain meaning of § 1441(b)(2) would lead to absurd results. *See Llanos*, 2020 WL 635477, at *3 ("[A]pplying the forum defendant rule requires a fact intensive inquiry that accounts for the characteristics of the parties and the timing of events."); *see also Burns*, 2020 WL 7229762, at *3 (citing *Llanos* and concluding that "the characteristics of the parties and the timing of events favor remand"). However, in both of these cases it was material that the reason service had not been effected prior to removal was the defendant's own representations or delay. Those circumstances are not present here.

*Choi* reasoned that "[t]here is *nothing* in the statute that speaks to [the] principle" that a plaintiff must be given a meaningful opportunity to effect service, and "courts would be left judging what a reasonable-opportunity-to-serve is with no statutory ground rules." 2021 WL 4133735, at *4. Similarly, in *Texas Brine*, the Fifth Circuit concluded: "We will not insert a new exception into Section 1441(b)(2), such as requiring a reasonable opportunity to serve a forum defendant." 955 F.3d at 487. This is persuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | | Date | March 28, 2023 |
|---|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | | |

*Colorado Seasons* stated disagreements to an approach to Section 1441(b)(2) that would "read into it a requirement of a fact-intensive inquiry to determine whether there was a reasonable opportunity for service of the unserved defendant prior to removal." Dkt. 40 at 5. Thus, it was determined that it is significant that "Congress may well have adopted the 'properly joined and served' requirement in an attempt to both limit gamesmanship and provide a bright-line rule keyed on service, which is clearly more easily administered than a fact-specific inquiry into a plaintiff's intent or opportunity to actually serve a home-state defendant." *Id.* (quoting *Gibbons*, 919 F.3d at 706). Requiring a reasonable opportunity for service would frustrate the purpose of creating a bright-line rule. *See Choi*, 2021 WL 4133735 ("[I]f courts are left to determine on their own, with no structured analysis, when a plaintiff has or has not had a reasonable opportunity to serve a local defendant, how can that possibly lead to *more* certainty on application of the statute?) (emphasis in original); *see also Glob. Indus. Inv.*, 2020 WL 2027374, at *4-5 (rejecting "Plaintiff's attempt to rewrite Section 1441(b)(2) to add a requirement that a plaintiff have a 'meaningful opportunity to serve' a defendant" because "Plaintiff's argument is nothing more than an attempt to impose an additional requirement that has no basis in the statutory text.").

For the foregoing reasons, the Motion to Remand is **DENIED**.

**V.      Motion to Compel Arbitration**

     A.      Legal Standards

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . ." 9 U.S.C. § 2. The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is the burden of the party opposing arbitration to prove any defense to it. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).

Under the FAA, the initial inquiry in connection with a motion to compel arbitration is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If these steps are satisfied, "the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* The FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25, 103 S.Ct. 927.

     B.      Application

The parties do not dispute that their Agreement contains an arbitration provision. *See* Dkt. 16 at 10 ("Admittedly the distribution agreement in question contains an arbitration provision"). Plaintiff's opposition to arbitration is based on the contention that the arbitration provision is unenforceable because it is unconscionable. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

1. <u>Whether the Court or the Arbitrator is to Decide Threshold Issues of Arbitrability</u>

As a preliminary matter, it must be determined whether it is for the court or the arbitrator to decide threshold issues of arbitrability, including whether the arbitration provision is valid and enforceable. Defendant first raised this issue in its Supplemental Brief, arguing that it is for the arbitrator, to decide threshold issues of arbitrability. Dkt. 28 at 4-6. Plaintiff disagrees. Dkt. 29 at 2-5.

a) What Law Applies to Issues of Arbitrability

The parties disagree as to whether federal or California law should apply to determine whether they delegated issues of arbitrability to the arbitrator. Plaintiff argues that California law applies because "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Dkt. 34 at 2 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Defendant assumes that federal law applies but does not address the issue directly. *See* Dkt. 28 at 4-5.

The Ninth Circuit has stated that where an agreement is covered by the FAA, "federal law governs the arbitrability question by default." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). The FAA applies to all contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also id.* For any arbitration agreement covered by the FAA, "'[t]he court is to make th[e] [arbitrability] determination by applying the federal substantive law of arbitration,' 'absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law.'" *Id.* (first quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985), then quoting *Cape Flattery Ltd. v. Titan Maritime,* 647 F.3d 914, 921 (9th Cir.2011)) (internal citations omitted) (alterations in original). *Brennan* rejected the plaintiff's argument that California law should apply to determine "'who—an arbitrator or a judge—should decide' whether the Arbitration Clause is unconscionable" because there was no "clear and unmistakable evidence" that the parties intended that California law would govern the question of arbitrability. *Id.* at 1128.

The parties do not dispute that the FAA governs the arbitration provision. Thus, federal law governs the question of who is to decide arbitrability unless there is clear and unmistakable evidence that the parties agreed to have state law apply to the issue. The Agreement contains no language stating that the parties intended to apply California law to the question of arbitrability. The only language in the Agreement as to choice of law is the following: "This Agreement shall be governed in all respects by the substantive laws of the State of New York, U.S.A. (without giving effect to the conflicts of law principles thereof)." Dkt. 14-2, Ex. 1 § 14. This does not reflect an agreement to apply California law to the issue of determining arbitrability.

*Brennan* considered whether a general choice-of-law provision was sufficient to provide clear and unmistakable evidence that the parties intended to apply non-federal law to the issue of arbitrability. The arbitration provision at issue in *Brennan* stated that "'any controversy of claim . . . shall be settled by binding arbitration'; that—in the event of arbitration—'the parties shall retain the rights of all discovery provided pursuant to the California Code of Civil Procedure'; and that '[a]ll rights, causes of action, remedies and defenses available under California law and equity . . . as though in a court of law." *Brennan*, 796 F. 3d at 1129. *Brennan* concluded that this provision did not constitute clear and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

unmistakable evidence because "it does not expressly state that California law governs the question of *arbitrability*." *Id.* Similarly, *Cape Flattery* concluded that a choice of law provision was ambiguous as to whether non-federal arbitrability law applied to determine whether a dispute was arbitrable. The language at issue there was the following: "Any dispute arising under this Agreement shall be settled by arbitration in London, England, in accordance with the English Arbitration Act 1996 and any amendments thereto, English law and practice to apply." 647 F.3d at 916. Thus, "[f]aced with such ambiguity," it concluded there was no clear and unmistakable evidence that English law applied, and instead, federal law applied. *Id.* at 921.

The choice-of-law provision here is broader than the ones at issue in *Brennan* and *Cape Flattery*. it states that the Agreement "shall be governed in all respects" by the substantive law of New York. However, district courts in this Circuit have concluded that similar choice-of-law provisions do not provide clear and unmistakable evidence of an intent to apply non-federal law as to determining arbitrability. *East Bay Restaurant and Tavern Retirement Plan* concluded that there was not clear and unmistakable evidence "that the parties agreed to apply California law to the question of arbitrability" where the relevant agreements stated that they were to be "interpreted and enforced in accordance with, and governed by, the laws of the State of California applicable to agreements made and to be performed wholly within that jurisdiction." *East Bay Restaurant and Tavern Retirement Plan v. Grasswood Partners, Inc.*, No. 220CV05204RGKGJS, 2020 WL 11421804, at *4 (C.D. Cal. Dec. 1, 2020). Similarly, *Shierkatz* found that a choice-of-law provision did not constitute clear and unmistakable evidence that the parties agreed to apply non-federal law to the issue of whether the court or an arbitrator was to decide arbitrability. *Shierkatz Rllp v. Square, Inc.*, No. 15-CV-02202-JST, 2015 WL 9258082, at *5 (N.D. Cal. Dec. 17, 2015). The provision stated: "This Agreement and any Dispute will be governed by California law and/or applicable federal law (including the Federal Arbitration Act." *Id. Shierkatz* concluded that this language "does not expressly state that California law governs the question of arbitrability," and held that federal law applies. *Id. Hernandez* reached the same conclusion where the agreement at issue had the following choice-of-law provision: "This Agreement shall be governed by the laws of the State of California, without regard to that state's conflict-of-laws rules." *Hernandez v. San Gabriel Temp. Staffing Servs.*, LLC, No. 17-CV-05847-LHK, 2018 WL 1582914, at *5 (N.D. Cal. Apr. 2, 2018). It reasoned that federal law applied to the determination whether arbitrability was delegated to the arbitrator because the agreement did "not expressly designate the law that governs arbitrability." *Id.*

As noted, the Agreement contains a general choice-of-law provision. Like those at issue in *East Bay*, *Shierkatz*, and *Hernandez*, it does not expressly state that New York law is to govern arbitrability. Thus, the provision is ambiguous and does not constitute "clear and unmistakable evidence" that the parties agreed to the application of non-federal law as to the arbitrability of any dispute. Therefore, federal law applies to determine whether the Agreement delegates issues of arbitrability to the arbitrator.

        b)      Whether the Agreement Delegates Arbitrability Issues to the Arbitrator

As noted, "[g]enerally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. However, these gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Brennan*, 796 F.3d at 1130 (internal citations omitted) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

649 (1986) (emphasis added)).

"Unlike the arbitrability of claims in general, whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (alterations and internal quotation marks omitted) (emphasis omitted). "Such '[c]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include ... a course of conduct demonstrating assent ... or ... an express agreement to do so.'" *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79-80 (2010) (Stevens, J., dissenting)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr.*, 561 U.S. at 70.

In its Supplemental Brief, Defendant argues that the Agreement delegates disputes as to arbitrability to the arbitrator because it provides that "[a]ny dispute arising between the parties out of or in connection with this Agreement shall be finally resolved by arbitration in San Francisco, California pursuant to the International Arbitration Rules of the American Arbitration Association." Dkt. 28 at 4. The AAA's International Arbitration Rules ("ICDR Rules") provide that "[t]he arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to arbitrability, to the existence, scope, or validity of the arbitration agreement(s) . . . ." Dkt. 29 at 27.[1]

The Ninth Circuit has held that the "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability," where one of the AAA rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Brennan*, 796 F.3d at 1130. The Ninth Circuit has reached the same conclusion with respect to the incorporation of the UNCITRAL arbitration rules. *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) (analogizing to AAA rules and reasoning that "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.").

As noted, the arbitration provision in the Agreement incorporates the AAA'S ICDR Rules. Although the specific set of AAA rules that were incorporated was not at issue in *Brennan*, the relevant delegation rule in the ICDR Rules is substantially identical to the rule discussed in *Brennan*. *Valley Power*, which was decided before *Brennan* and *Oracle*, concluded that by incorporating "the ICDR rules, the parties manifested their unmistakable intent that the arbitrators, rather than a court, would decide whether there is an enforceable agreement to arbitrate." *Valley Power Sys., Inc. v. Gen. Elec. Co.*, No. CV 11-10726 CAS JCX, 2012 WL 665977, at *5 (C.D. Cal. Feb. 27, 2012); *see also ASUS Computer Int'l v. InterDigital*, Inc., No. 15-CV-01716-BLF, 2015 WL 5186462, at *4 (N.D. Cal. Sept. 4, 2015) (incorporation of ICDR rules "clearly and unmistakably delegated arbitrability to an arbitrator"). The arbitration provision in *Valley Power* contained similar language to the provision here; it stated that "[a]ny controversy arising under or in relation to this agreement shall be settled by arbitration . . . in accordance with the International Arbitration Rules then in force of the American Arbitration

---

[1] The International Centre for Dispute Resolution ("ICDR") is the international division of the AAA. Dkt. 29 at 8. The document promulgating the ICDR Rules, which is attached to the Request for Judicial Notice, contains both the International Arbitration Rules and the International Mediation Rules. *Id.* at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV22-00571 JAK (AFMx) | | Date | March 28, 2023 |
|---|---|---|---|---|
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | | |

Association." *Id.* at *1.

*Brennan* left open whether its holding applied to cases involving unsophisticated parties. 796 F.3d at 1131 ("[O]ur holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. . . . Nevertheless, as in *Oracle America,* we limit our holding to the facts of the present case, which do involve an arbitration agreement 'between sophisticated parties.'") (quoting *Oracle*, 724 F.3d at 1075 & n. 2). District courts have reached different conclusions on the matter. *Yan Guo v. Kyani, Inc.*, 311 F. Supp. 3d 1130, 1155 (C.D. Cal. 2018). However, both parties in this case are sophisticated commercial entities. Plaintiff is alleged to be "a reputable specialized pet food wholesale company with significant experience distributing well-known brands in Greater China." Dkt. 1-1 ¶ 2. Defendant is alleged to be "an American pet food manufacturer which sells its products worldwide." *Id.* ¶ 4. The parties entered into a commercial contract requiring Plaintiff to meet an annual sales target of at least $4 million. *Id.* ¶ 14. Thus, *Brennan* governs. The incorporation of the ICDR Rules in the Agreement constitutes clear and unmistakable evidence that the parties agreed to delegate threshold issues of arbitrability to the arbitrator, including challenges to the validity of the Agreement, e.g., whether it is unconscionable.

Plaintiff relies on California law to argue that incorporation of the AAA rules is insufficient to constitute an agreement to delegate arbitrability to the arbitrator because "there is simply no express or implied in fact contract that would preclude this Court from deciding the validity of the arbitration agreement." Dkt. 34 at 3. However, for the reasons stated, federal law applies here.

Further, even if California law applied, it is not clear that the outcome would change. "Under both [California and federal law,] until shown otherwise, 'courts presume that the parties intend courts, not arbitrators, to decide . . . disputes about 'arbitrability.'" *Nelson v. Dual Diagnosis Treatment Ctr., Inc.*, 77 Cal. App. 5th 643, 655 (2022) (quoting *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2015)) ("Sovereign's insistence on the FAA' s application is puzzling because there is no disagreement between California law and the FAA regarding arbitrability.").

Plaintiff argues that reliance on *Oracle* is "misplaced because it is not based on the application of California law and based on the 'liberal <u>federal</u> policy favoring arbitration agreements,'" but this is not so. Dkt. 34 at 3 (quoting *Oracle*, 724 F.3d at 1072) (emphasis in original). *Oracle* is based on the same standard that is applied by California courts, i.e., "whether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise.*'" *Oracle*, 724 F.3d at 1072 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83) (emphasis in original); *see Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (2004), *as modified on denial of reh'g* (Dec. 28, 2004) ("California law is consistent with federal law on the question of who decides disputes over arbitrability. . . . Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Further, *Oracle* expressly stated that "there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." 724 F.3d at 1072.

For the foregoing reasons, it is determined that the Agreement delegates issues of arbitrability to the arbitrator.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

    2.  <u>Whether the Delegation Provision is Enforceable</u>

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement to *delegate* arbitrability—the [d]elegation [p]rovision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (emphasis in original). "Even if a delegation of arbitrability is clear and unmistakable it may be found unenforceable if the delegation *itself* is unconscionable." *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419 (N.D. Cal. 2015) (emphasis in original) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71-74 (2010)). "When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Rent-A-Ctr.,* 561 U.S. at 73).

Where a contract has an arbitration provision, which includes a delegation provision, "multiple severable arbitration agreements exist." *Brennan*, 796 F.3d at 1133. In *Rent-A-Center*, the plaintiff argued that the arbitration agreement as a whole was unconscionable, but he did not raise any specific challenge to the delegation provision. Consequently, the Supreme Court concluded it would not consider such arguments. 561 U.S. at 72. The Court stated that unless a plaintiff challenges "the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

Plaintiff argues that the arbitration provision as a whole is unconscionable. However, Plaintiff has not argued that the delegation provision itself is unconscionable. Defendant raised the issue of the delegation provision for the first time in its Supplemental Brief. Dkt. 28 at 5-6. Plaintiff was then provided an opportunity to respond, which it did in its Additional Supplemental Brief. *See* Dkt. 33 ("Defendant raised for the first time the issue whether the parties' agreement delegates issues of the validity of the arbitration agreement to the arbitrator. Because this argument was not raised in Defendant's Motion to Compel Arbitration or its Reply, it is appropriate to provide Plaintiff with an opportunity to respond. . . . Plaintiff shall file a brief, not to exceed five pages, presenting any response to whether the validity of the arbitration agreement is to be delegated to an arbitrator.").

Plaintiff does not argue that the delegation provision is unconscionable. Instead, it argues that "[t]he validity of an arbitration agreement should be determined by this Court based on California law," and that the incorporation of the AAA rules does not constitute an agreement to delegate issues of arbitrability to the arbitrator. Dkt. 34 at 2-3. Plaintiff reiterates its argument that the arbitration agreement as a whole is unconscionable, and analogizes to two California cases finding arbitration agreements unconscionable. *Id.* at 4-5 (citing *Ramos v. Superior Ct.*, 28 Cal. App. 5th 1042 (2018), *as modified* (Nov. 28, 2018); *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267 (2003)). It states that, like the plaintiffs in those cases, "HKCT is in an unequal bargaining position, and the arbitration agreement was one of adhesion. Moreover, California has a strong interest in having its substantive law regarding unconscionability applied in the context of arbitration provisions, and the Court should apply California law in determining the issue of validity of the arbitration agreement." *Id.* None of Plaintiff's arguments contends that the delegation provision is itself unconscionable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV22-00571 JAK (AFMx) | Date | March 28, 2023 |
| Title | Hong Kong Continental Trade Co. Limited v. Natural Balance Pet Foods, Inc. | | |

Because the Agreement delegates questions of its enforceability to the arbitrator, Plaintiff's unconscionability challenge to the Agreement as a whole may not be considered by this Court; it is to be presented to, and considered by the arbitrator. *See Newcombe-Dierl v. Amgen*, No. CV222155DMGMRWX, 2022 WL 3012211, at *3 (C.D. Cal. May 26, 2022)
("If such a so-called 'delegation provision' is clear and unmistakable, then even arbitrability challenges based on the unconscionability of the arbitration agreement as a whole must be decided by the arbitrator. Only challenges to the delegation provision specifically can be heard by the court.") (citing *Rent-A-Ctr.,* 561 U.S. at 72).

For these reasons, the issue of arbitrability, including matters as to unconscionability, is delegated to the arbitrator.

For the foregoing reasons, the Motion to Compel Arbitration is **GRANTED**.

**VI.    Conclusion**

For the foregoing reasons, the Motion to Remand is **DENIED**, and the Motion to Compel Arbitration is **GRANTED.** Pursuant to 9 U.S.C. § 3, this action is **STAYED** pending the determination of arbitrability by the arbitrator. The matter is placed on the Court's Inactive Calendar. Within 30 days of the issuance of this Order, the parties shall file a Joint Status Report as to the anticipated schedule for the determination of arbitrability by the arbitrator. Thereafter, they shall file an updated Joint Report on the earlier of every 45 days, or within ten days of the completion of the issuance of an order by the arbitrator on that issue.

**IT IS SO ORDERED.**

|  |  : |  |
|---|---|---|
|  | Initials of Preparer | tj |